# EXHIBIT A

HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
973.274.2000
Attorneys for Plaintiff
    First American Title Insurance Company



<table>
<tr><td>- - - - - - - - - - - - - - - - - - - - - x</td><td></td></tr>
</table>

|  |  |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION:<br>: MERCER COUNTY |
| Plaintiff, | : DOCKET NO.: C- 62-07 |
| vs. | : |
|  | CIVIL ACTION |
| CLEAR ADVANTAGE TITLE, INC.,<br>EDWARD A. M. FURFEY, JOHN DOE 1-5<br>(Fictitious Names) and ABC<br>CORPORATIONS 1-5 (Fictitious Names), | VERIFIED COMPLAINT |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - x

Plaintiff First American Title Insurance Company ("First American" or "Plaintiff"), by and through its attorneys, Herrick, Feinstein LLP, by way of Verified Complaint against the defendants, says:

## The Parties

1.      Plaintiff First American is a title insurance company organized under the laws of the State of California with offices located at Five Greentree Centre, Suite 100, Marlton, New Jersey 08053. The Talon Group ("Talon") is a division of First American. First American and Talon shall be referred to collectively as "First American."

2.      Defendant Clear Advantage Title, Inc. ("Clear Advantage") is a corporation organized under the laws of the State of New Jersey, and a title agency licensed by the State of New Jersey, having a principal place of business at 1670 Whitehorse-Hamilton

Square Road, Hamilton, New Jersey 08690. Clear Advantage also maintains offices at 1410 Paul Avenue, Manahawkin, New Jersey 08050 and 3100 Highway 138, Wall, New Jersey 07719.

3.    Upon information and belief, defendant Edward A. M. Furfey ("Furfey") is a citizen of the State of New Jersey and resides at 24 W. Spring Hollow Drive, Hopewell, New Jersey 08525-2105. Furfey is the president and sole shareholder of Clear Advantage.

4.    John Does 1 through 5 (fictitious names) are persons who have participated in the matters set forth herein and/or who have exercised responsibility, dominion and/or control with respect to such matters.

5.    ABC Corporations 1 through 5 (fictitious entities) are corporations or other legal entities that have participated in the matters set forth herein and/or who have exercised responsibility, dominium and/or control with respect to such matters.

## Facts Relevant to All Claims for Relief

### Nature of this Action

6.    This is an action for fraud, conversion, breach of fiduciary duty, breach of contract and other related claims arising out of a fraudulent scheme in which Clear Advantage, a title insurance agent for Talon, a division of First American, together with its president, Furfey, stole and misappropriated in excess of $3.3 million earmarked for payment and/or remittance to First American, its insureds and others.

7.    Clear Advantage was (until a recent termination) an agent of First American. Essentially, Clear Advantage was authorized by First American to, among other things, originate and solicit applications for title insurance, issue commitments to insure, conduct settlements in connection with applications for title insurance and issue policies of title insurance subject to certain rules, procedures and limitations.

2

8.    In its capacity as First American's agent, Clear Advantage was obligated to, among other things, receive monies from real estate sellers, buyers and lenders at closings, and then use those funds (i) to pay off prior mortgages and other liens of record, (ii) to pay certain transfer fees, recording fees and other identified closing costs, and (iii) to remit the surplus, if any, to the recipient designated by the parties.  If required by a buyer, seller or lender, Clear Advantage, in its capacity as an agent for one or more of these parties, would at times deposit funds into its escrow accounts pending resolution of certain closing issues.

A.    **The Agency Agreement**

9.    Clear Advantage and First American executed an Agency Agreement dated August 5, 2005 (the "Agency Agreement") which endowed First American with the right, as may be necessary or desirable, "to examine all accounts of Agent and to check any and all checks, books, records, and files of Agent, which pertain to the Business of Title Insurance." Although the files themselves belong to Clear Advantage, the Agency Agreement provided that "Insurer shall have the continued right of access to, and continued use of these files, including the ability to make copies from time to time."  Annexed as Exhibit A is a copy of the Agency Agreement.

10.    The Agency Agreement further provided that First American "shall have the right forthwith to cancel and terminate this Agreement in the event Agent fails to report and to pay to Insurer the fees due the latter within 15 days after same became due..., or otherwise fails to comply with the terms and provisions of this Agreement, or if Insurer shall receive information of any act of apparent fraud or dishonesty on part of the Agent or of any of Agent's officers or employees and same proves to be correct."

3

11.    Clear Advantage and its principal, Furfey, also agreed to indemnify First American for all loss (including attorneys' fees and other costs) sustained as a result of Clear Advantage's (i) breach of the Agency Agreement, (ii) failure to comply with any rules, regulations and instructions given by First American, or (iii) dishonest, fraudulent, malicious, criminal or negligent conduct with respect to various agency responsibilities.

**B.    Clear Advantage's Breach of the Agency Agreement**

12.    In late 2006, First American reviewed a reconciliation as of August 2006 of Clear Advantage's escrow accounts, done by Clear Advantage's employees, that are held with 1st Constitution Bank.  At the conclusion of the reconciliation review, First American's Audit Manager concluded that a deficiency in excess of $3.2 million existed that was believed to be attributable to a series of "double" payments to identified payees ($696,000) and to employee theft.  The total negative balance on the trial balance sheets at the conclusion of August 2006 was $3,258,212.  At the time, Clear Advantage and Furfey claimed that they had no involvement with the suspected wrongdoing, and would investigate and correct any discrepancies.

13.    Thereafter, Clear Advantage determined that an employee, Jeffrey Gibb ("Gibb"), stole and misappropriated in excess of $1,019,894 during the course of his employment commencing in October 2003 and continuing through October 2006.  Clear Advantage commenced an action in October 2006 seeking the return of the allegedly stolen funds captioned <u>Clear Advantage Title Company, Inc., a New Jersey Corporation v. Jeffrey Gibb, et al.</u>, Docket No. MER-L-69-07.  Upon information and belief, Gibb has returned approximately $300,000 to Clear Advantage.

4

14.    First American thereafter reviewed Clear Advantage's periodic reconciliations, trying to ascertain the true facts. The true facts were obscured by the agent, who misstated numbers on the reconciliation.

15.    In and around May 2007, First American reviewed Clear Advantage's reconciliations through April 2007 which showed that there was then an escrow shortage of $3,141,128.96, together with unverified client funds of $193,013.04, for a total shortage of $3,334,142. Even assuming the theft allegedly perpetrated by Gibbs, Clear Advantage was unable to explain the disappearance of the additional funds, or its failure to replenish its trust account to the extent of the missing funds as required by law and the parties' agreement.

16.    In or around June 2007, Plaintiff learned (through a direct complaint from the insured lender) that Clear Advantage had received $632,152.07 from a mortgage lender, Hogar Mortgage & Financial Services, Inc. ("Hogar"), in connection with a contemplated closing. When the loan transaction did not consummate, Clear Advantage returned $100,000 of those funds to Hogar, but failed and refused to remit the balance. Annexed as Exhibit B is a copy of the June 15, 2007 claim letter.

17.    On information and belief, as of June 22, 2007, Clear Advantage's escrow accounts were fully depleted and carrying a negative balance. Accordingly, Clear Advantage and its representatives and agents, have misappropriated and/or converted the remaining $532,152.07 that belongs to Hogar, together with more than $2.5 million in additional funds belonging to First American, its insureds and others.

18.    Upon information and belief, Clear Advantage, together with its representatives and agents, have serially misappropriated, converted and diverted funds entrusted to them for the benefit of First American, its insureds and others.

5

19.     As a result of the defalcations perpetrated by Clear Advantage and its representatives and agents, First American has incurred, or will incur, damages in excess of $3.3 million in connection the foregoing misappropriation, conversion and diversion of funds. In addition, First American anticipates additional losses resulting from claims submitted by insured lenders and owners arising out of (i) Clear Advantage's failure to satisfy liens and encumbrances of record, or (ii) Clear Advantage's failure to remit certain other sums due to third parties.

## COUNT ONE
### (Injunctive Relief)

20.     First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

21.     Upon information and belief, the defendants, together with their agents and representatives, have serially and repeatedly misappropriated, converted and diverted funds belonging to First American, its insureds and others.

22.     Upon information and belief, the defendants, together with their agents and representatives, have caused escrow and operating account deficiencies by misappropriating the property of First American and other third parties.

23.     Upon information and belief, the defendants' acts and omissions have materially threatened, compromised and impaired the rights and interests of those who have retained its services to search the record title, to insure the quality of title, to identify and satisfy identifiable liens of record and to safeguard significant funds entrusted to it for the benefit of First American, its insureds and other third parties.

24.     The defendants are liable for the defalcation, conversion and/or misappropriation of any funds held in its escrow, operating and other business accounts.

6

25.    As a result of Clear Advantage's contractual relationship with Plaintiff, Plaintiff will be liable for all covered losses.

26.    In addition, Plaintiff will also suffer damage to its reputation if the public perceives a continued relationship between First American, Clear Advantage and its principals and representatives.

27.    Absent issuance of injunctive relief, Plaintiff's rights, and the rights of its insureds, will be materially impaired.

28.    Plaintiff does not have an adequate remedy at law and will likely suffer irreparable harm since money damages alone could not remedy the continuing harm being committed against First American and its reputation, and to innocent third parties.

29.    If Clear Advantage has notice of this action, it will likely secrete the records necessary to unravel the defalcation, flee with any remaining assets, and further harm First American and the public.

30.    Accordingly, First American requests the Court to enter a preliminary and permanent injunction (i) requiring all defendants to preserve and turn over to First American all books, records and title files of Clear Advantage, including all policies, endorsements and commitments, (ii) requiring that all funds in Clear Advantage's escrow, operating and other business accounts be frozen and preserved, and (iii) preventing all defendants from further use of First American's name, products or software, from holding themselves out as an agent for First American, and from issuing any title insurance commitments, closing service letters or title insurance policies on behalf of First American.

**WHEREFORE**, Plaintiff demands judgment against all defendants, jointly and severally, as follows:

a.      Directing the immediate preservation and turnover to First American of all books, records and title files of Clear Advantage including, but not limited to, all policies, endorsements and commitments;

b.      Directing the immediate preservation and freezing of all funds in Clear Advantage's escrow, operating and other business accounts, and providing an accounting therefor;

c.      Preliminarily and permanently enjoining further use of First American's name, products or software, holding themselves out as an agent for First American, or the issuance of any title insurance commitments, closing service letters or title insurance policies on behalf of First American;

d.      Directing immediate payment to First American of all premiums that it has collected from First American's customers, but has failed to remit to First American;

e.      Directing payment to First American of all attorneys' fees and costs incurred in connection herewith; and

f.      Awarding First American such other and further relief as may be just and proper.

## COUNT TWO
### (Conversion)

31.     First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

32.     The funds that Clear Advantage held in its escrow accounts, or escrow and settlement funds that were commingled in other business accounts, were held by Clear

Advantage as agent on behalf of First American for the purpose of completing transactions in connection with First American's issuance of title insurance policies.

33.    Therefore, funds in the accounts were owned by First American and its insureds.

34.    By the defendants' actions, they misappropriated funds belonging to First American and its insureds, and took unauthorized possession of them.

35.    The defendants are liable for all funds wrongfully converted in the approximate amount of $3.3 million. The specific amount of the converted funds will be identified when Clear Advantage provides a formal accounting as demanded herein.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.    Awarding compensatory and punitive damages;

b.    Awarding pre- and post-judgment interest;

c.    Awarding legal fees and costs of suit; and

d.    Granting such other and further relief as the Court may deem just and equitable.

## COUNT THREE
### (Fraud and Misrepresentation)

36.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

37.    The defendants engaged in serial and repeated acts of artifice and deceit designed to enable them to misappropriate funds belonging to First American, its insureds and third parties.

9

38.     The defendants concealed their artifice and deceit through a series of misrepresentations to First American and others that induced members of the public to entrust significant funds to them in conjunction with real estate and financing transactions.

39.     The defendants committed fraudulent acts under the auspices of the legitimacy afforded through their agency affiliation with First American.

40.     The defendants knew, or should have known, that their acts and omissions would compromise the quality of title of Plaintiff's insureds, and would create significant injury and damage to Plaintiff, its insureds and third parties.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.     Awarding compensatory and punitive damages;

b.     Awarding pre- and post-judgment interest;

c.     Awarding legal fees and costs of suit; and

d.     Granting such other and further relief as the Court may deem just and equitable.

## COUNT FOUR
### (Misappropriation)

41.     First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

42.     The defendants have wrongfully and intentionally misappropriated funds belonging to First American, its insureds and/or third parties.

43.     First American has suffered injury and damage as a result of the defendants' conduct.

10

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.    Awarding compensatory and punitive damages;

b.    Awarding pre- and post-judgment interest;

c.    Awarding legal fees and costs of suit; and

d.    Granting such other and further relief as the Court may deem just and equitable.

## COUNT FIVE
### (Breach of Fiduciary Duty)

44.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

45.    The defendants owed a fiduciary duty to First American and its insureds with respect to funds deposited in its accounts.

46.    By their actions as aforesaid, the defendants breached their fiduciary duty to First American and others.

47.    As a result of the defendants' breaches, First American will incur losses in excess of $3.3 million to replace the funds belonging to its insureds and other third parties that have been wrongfully misappropriated by the defendants.

48.    In addition, First American anticipates further losses attributable to claims submitted by its insureds as a result of Clear Advantage's failure to safeguard and/or properly apply escrow funds that had been entrusted to it.

49.    The defendants' breaches of their fiduciary duties were intentional, willful, wanton and malicious, and have resulted in significant injury and damage to Plaintiff.

11

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

 a.  Awarding compensatory and punitive damages;

 b.  Awarding pre- and post-judgment interest;

 c.  Awarding legal fees and costs of suit; and

 d.  Granting such other and further relief as the Court may deem just and equitable.

**COUNT SIX**
**(Breach of Contract)**

50. First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

51. Clear Advantage's conduct as aforesaid constitutes a breach of its contract with Plaintiff.

52. Plaintiff has been damaged by Clear Advantage's breach.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

 a.  Awarding compensatory and punitive damages;

 b.  Awarding pre- and post-judgment interest;

 c.  Awarding legal fees and costs of suit; and

 d.  Granting such other and further relief as the Court may deem just and equitable.

**COUNT SEVEN**
**( Breach of Guaranty)**

53. First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

12

54.    Furfey executed a Personal Undertaking dated August 5, 2005 (the
"Guaranty") in favor of First American whereby he guaranteed "the full, prompt and complete
performance of the terms and obligations of AGENT as set forth in the Agency Agreement dated
August 5, 2005."

55.    The Guaranty further provided that Furfey's liability thereunder was
"primary and personal," and that First American "shall not be required to exercise its remedies"
against Clear Advantage before enforcing it against Furfey.

56.    Clear Advantage has breached and violated the terms and obligations
contained in the Agency Agreement by, among other things, misappropriating and converting
more than $3.3 million in escrowed funds belonging to First American and its insureds.

57.    Clear Advantage's breach and violation of the Agency Agreement has
caused injury and damage to Plaintiff.

58.    Furfey is a guarantor of all injury and damage suffered by First American
as a result of the foregoing breach, and is liable to First American therefor.

**WHEREFORE**, Plaintiff demands judgment against Furfey as follows:

a.    Awarding compensatory and punitive damages;

b.    Awarding pre- and post-judgment interest;

c.    Awarding legal fees and costs of suit; and

d.    Granting such other and further relief as the Court may deem just and
equitable.

13

## COUNT EIGHT
### (Unjust Enrichment)

59.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

60.    The defendants misappropriated, converted and diverted more than $3.3 million based upon false premises.

61.    If Plaintiff does not recover this amount, together with any and all additional sums necessary to resolve and satisfy any claims under or in connection with any policies of title insurance as may result thereby, the defendants will be unjustly enriched.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.    Disgorging all sums netted and received by and through the foregoing acts and omissions;

b.    Awarding compensatory and punitive damages;

c.    Awarding pre- and post-judgment interest;

d.    Awarding legal fees and costs of suit; and

e.    Granting such other and further relief as the Court may deem just and equitable.

## COUNT NINE
### (Constructive Trust)

62.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

63.    The funds that the defendants misappropriated and converted belonged to Plaintiff and its insureds.

14

64.     The defendants will remain unjustly enriched unless a constructive trust in favor of Plaintiff is imposed on the misbegotten funds and other assets.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.     Imposing a constructive trust on the assets of the defendants in an amount equal to the value of the funds and other assets misappropriated and converted;

b.     Awarding pre-judgment attachment, in accordance with R. 4:60;

c.     Awarding pre-judgment and post-judgment interest; and

d.     Awarding such other and further relief as the Court may deem just and proper, including costs and attorney's fees.

## COUNT TEN
### (Money Had and Received)

65.     First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66.     By means of the wrongful conduct set forth above, the defendants received money that rightfully belongs to First American.

67.     By means of the wrongful conduct set forth above, the defendants have benefited from receipt of the money that rightfully belongs to First American.

68.     The defendants have been unjustly enriched and have received funds which in justice and in equity they should not be entitled to retain.

69.     Under the common law theory of "money had and received," First American is entitled to recover the total sum received by the defendants, with interest accruing from the date each component of said funds was received by them.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

            a.       Disgorging all sums netted and received by and through the foregoing acts and omissions;

            b.       Awarding compensatory and punitive damages;

            c.       Awarding pre- and post-judgment interest;

            d.       Awarding legal fees and costs of suit; and

            e.       Granting such other and further relief as the Court may deem just and equitable.

**COUNT ELEVEN**
**(Breach of Good Faith and Fair Dealing)**

70.      First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

71.      Clear Advantage was under a duty of good faith and fair dealing with respect to Plaintiff.

72.      Clear Advantage, by the aforesaid actions, omissions and conduct, breached his duty of good faith and fair dealing.

73.      As a direct and proximate result, Plaintiff has incurred, and will continue to incur, damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Clear Advantage as follows:

            (a)      Awarding compensatory and punitive damages;

            (b)      Awarding pre- and post-judgment interest;

            (c)      Awarding legal fees and costs of suit; and

16

(d)    Granting such other and further relief as the Court may deem just and equitable.

## COUNT TWELVE
### (Negligence)

74.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

75.    Clear Advantage knew, or should have known, that more than $3.3 million had been misappropriated, converted or misdirected by its employees, agents or designees.

76.    Clear Advantage knew, or should have known, the misappropriation, conversion and/or misdirection of more than $3.3 million would result in significant loss and damage to First American and its insureds.

77.    Clear Advantage knew, or should have known, that its failure to prevent, investigate or discontinue the misappropriation, conversion and misdirection of more than $3.3 million, or to replenish the funds wrongfully misappropriated, converted or misdirected, would result in injury and damage to Plaintiff, its insureds and others.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.    Awarding compensatory and punitive damages;

b.    Awarding pre- and post-judgment interest;

c.    Awarding legal fees and costs of suit; and

d.    Granting such other and further relief as the Court may deem just and equitable.

17

## COUNT THIRTEEN
### (Conspiracy)

78.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

79.    The defendants conspired between them as aforesaid to misappropriate and convert funds belonging to third parties.

80.    The torts and wrongs alleged herein were committed as a result of the defendants' conspiracy.

81.    By reason of the foregoing, Plaintiff has suffered injury and damages.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.    Awarding compensatory and punitive damages;

b.    Awarding pre- and post-judgment interest;

c.    Awarding pre-judgment attachment, in accordance with R. 4:60, and imposition of a constructive trust,

d.    Awarding legal fees and costs of suit; and

e.    Granting such other and further relief as the Court may deem just and equitable.

## COUNT FOURTEEN
### (Receiver)

82.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

18

83.    Upon information and belief, Clear Advantage continues to operate for the intended purpose of misappropriating and converting funds belonging to First American and other third parties.

84.    First American and other third parties are likely to suffer irreparable injury and damage if Clear Advantage is permitted to operate without the oversight or control of a third party.

85.    The appointment of a receiver is necessary to protect the interests of First American and other third parties who have already advanced or entrusted to the defendants, or may hereinafter advance or entrust to the defendants, funds belonging to third parties that are vulnerable to theft, conversion or other unlawful conduct.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.    Appointing a receiver to assume management and control over the assets and accounts of Clear Advantage;

b.    Freezing all escrow accounts, operating accounts, business accounts and/or other accounts held by Clear Advantage or its designees or agents;

c.    Awarding pre-judgment attachment, in accordance with R. 4:60, and imposition of a constructive trust, upon all such funds belonging to First American or third parties;

d.    Awarding legal fees and costs of suit; and

e.    Granting such other and further relief as the Court may deem just and equitable.

19

## COUNT FIFTEEN
### (Accounting)

86.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

87.    Clear Advantage has breached its Agency Agreement with First American by failing to properly account for the funds and property that it has held on behalf of First American, its insureds and others.

88.    First American has performed all of its obligations under the Agency Agreement.

89.    Therefore, First American requests the Court to enter a judgment requiring Clear Advantage to account for all funds and property that it has held on First American's behalf.

**WHEREFORE**, Plaintiff demands judgment against Clear Advantage as follows:

a.    Directing that it provide an accounting with respect to all monies received and disbursed, in all accounts owned, held or controlled by Clear Advantage, from January 2000 to the present;

b.    Awarding Plaintiffs legal fees and costs of suit; and

c.    Granting such other and further relief as this Court may deem just and equitable.

## COUNT SIXTEEN
### (Contribution)

90.    First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

91.    First American demands contribution from the defendants for any and all damages set forth herein.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

      a.      Awarding compensatory and punitive damages;

      b.      Awarding pre- and post-judgment interest;

      c.      Awarding legal fees and costs of suit; and

      d.      Granting such other and further relief as the Court may deem just and equitable.

## COUNT SEVENTEEN
### (Indemnification)

92.     First American repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

93.     First American demands that the defendants indemnify it, and hold it harmless, from any and all damages set forth herein.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

      a.      Awarding compensatory and punitive damages;

      b.      Awarding pre- and post-judgment interest;

      c.      Awarding legal fees and costs of suit; and

d.    Granting such other and further relief as the Court may deem just and

equitable.

HERRICK, FEINSTEIN LLP

By _____

Jaimee Katz Sussner
Attorneys for Plaintiff
  First American Title Insurance
  Company
One Gateway Center
Newark, New Jersey  07102
Phone:  973.274.2000

Dated:  June 26, 2007

22

## DESIGNATION OF TRIAL COUNSEL

Jaimee Katz Sussner is hereby designated as trial counsel in the referenced matter.

Dated: June 27, 2007

Jaimee Katz Sussner

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned, attorneys for plaintiff First American Title Insurance Company, hereby certify in accordance with R. 4:5-1 that the within action is not the subject of any other action pending in any Court or before any arbitration panel and that no such action is now contemplated. The undersigned further certifies after consultation with plaintiff that there are no other parties known who should be joined in this action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 27, 2007

Jaimee Katz Sussner

23

## **VERIFICATION**

GARY R. CORTELLESSA, of full age, hereby certifies and states as follows:

1.  I am the Executive Vice President of The Talon Group, a Division of First

    American Title Insurance Company, the plaintiff in the above-captioned action.

2.  I have read the foregoing Verified Complaint, and I hereby certify that all

    Allegations contained therein are true and correct, except those made on

    information and belief.

    I am aware that if any of the foregoing statements made by me are willfully false,

I am subject to punishment.

GARY R. CORTELLESSA

Dated : June 26, 2007

## CERTIFICATION OF GENUINENESS

JAIMEE KATZ SUSSNER, of full age, hereby certifies as follows:

1.     I am an attorney-at-law of the State of New Jersey and I am associated with the firm of Herrick, Feinstein LLP, attorneys for the Plaintiff in the within matter.

2.     Pursuant to Rule 1:4-4(c), I certify as to the genuineness of the telefax copy signature of Gary R. Cortellessa on the verification page of the Verified Complaint (the "Verified Complaint").  If requested, a copy of the verification page with an original signature affixed thereto can be filed with the Court.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
JAIMEE KATZ SUSSNER

Dated: June 27, 2007



## AGENCY AGREEMENT FOR NEW JERSEY

**THIS AGREEMENT**, is made on the 5th day of August 2005, between **FIRST AMERICAN TITLE INSURANCE COMPANY**, a Corporation organized under the laws of the State of California, through its division, **THE TALON GROUP**, hereafter collectively referred to as "Insurer" and **CLEAR ADVANTAGE TITLE, INC.**, a Corporation organized under the laws of the State of New Jersey, hereafter referred to as "Agent."

Insurer and Agent, in consideration of the mutual promises and covenants in this Agreement agree as follows:

## APPOINTMENT OF AGENT

1. Insurer appoints Agent as its representative, or agent, to originate and solicit applications for title insurance, to examine and issue commitments to insure, conduct settlements in connection with applications for title insurance, and to issue and countersign policies of title insurance (sometimes hereinafter collectively and/or singularly referred to as the "Business of Title Insurance") in the State of New Jersey.

### NON-EXCLUSIVE AGENCY

The appointment of Agent is on a non-exclusive basis. It is subject to the rights of other agents or representatives of insurer now or hereafter appointed by Insurer to conduct the Business of Title Insurance.

## AGENT'S AFFIRMATIVE DUTIES

2. Agent shall :

### EXAMINATION

A. Receive and process applications for title insurance in a prudent and ethical manner and in accordance with recognized underwriting principles, and the rules and regulations, and instructions of insurer. Insurability of title shall be determined on the basis of one or more of the following:

    (1) An examination of an abstract of title that shows all relevant public records prepared and certified by Agent or by another recognized professional abstractor whose work is accepted by prudent local title examiners; or

    (2) An examination of Agent's indices and records supplemented, to the extent necessary, by an abstract or search of the relevant public records; or

1

(3)    Title reports or opinions, on forms furnished or approved by Insurer, by attorneys at law approved by Insurer.

## MAINTAIN RECORDS

B.    Preserve in Agent's possession and ownership, for at least the time required by law, or in the absence of such law for a period of not less than 15 years, a copy of the policy and other evidence of title issued, and all supporting documents on which a determination of insurability is made, including, but not limited to, work sheets, affidavits, lien waivers, surveys, searches, inspection reports, relevant correspondence from attorneys closing title, and similar documents, settlement instructions, statements and related documents. After the mandatory record retention period has expired, if agent wishes to destroy or otherwise dispose of the records, Insurer shall first be given the right to assume custody of the records in lieu of their disposition.

## MONTHLY REPORTS AND REMITTANCES

C.    i.    Render a monthly report, no later than the 15th day of the month, to Insurer   reflecting premium fees due insurer, together with Agent's check in full payment of the premium fees to which shall be added the cost of any reinsurance purchased by Insurer.  The amount remitted to Insurer as the premium fee on each policy of title insurance shall be fifteen percent (15%)of the filed premium rate and any endorsement fees, based on the Schedule of Rates for Title Insurance in New Jersey, as approved by the New Jersey Department of Insurance, as it may be amended in accordance with filings with the Department of Insurance.

When reinsurance shall be provided, the cost of the reinsurance shall be deducted from the total premium collected before the above percentage is applied to determine the amount to be remitted; this premium, together with the sums due for reinsurance (unless previously paid) shall be forwarded to Insurer in accordance with the provisions of this paragraph.

ii.    All obsolete forms which contain serial numbers including spoiled, obsolete or canceled policies, together with a list identifying the forms returned by Form Number and Serial Number, shall be returned to the Insurer when sending in each monthly Remittance Report, together with, but separated from, the reporting copies of policies issued.

## PREMIUM TRUST ACCOUNT

D.    Collect, or see to the collection of, all fees for Commitments to Insure and Policies from the parties responsible therefore.  Immediately upon receipt by Agent, premium and reinsurance fees shall become the property of Insurer. These sums, until remitted to Insurer on a prompt, monthly basis, shall be segregated from the funds belonging to Agent and maintained in a federally insured bank trust account.

2

**POLICY REGISTER**

E.   Maintain a policy register, in form approved by Insurer, in which Agent shall enter a record of all insuring forms issued and forward to Insurer the home office copy of every policy when issued by Agent.

**TRUST ACCOUNT AND RECORDS**

F.   Keep safely and segregated in a bank trust account all money entrusted to Agent by Insurer or others in the course of Agent's operation under this agreement, and keep safely any property entrusted to Agent.  Agent shall keep appropriate records of these funds and property.

**ERRORS & OMISSIONS INSURANCE**

G.   (1) Maintain Abstracter's/Agent's Errors and Omissions (E&O) Insurance Coverage in favor of Insurer with a minimum liability of $1,000,000.00 per claim and an aggregate limit of $2,000,000.00 with a deductible agreeable to Insurer; (2) Agent shall provide Insurer copies of Declaration Pages evidencing compliance with this paragraph with proof of payment of all premiums.

**MAINTAIN BUSINESS NOTICE**

H.   During the term of this Agreement, Agent shall maintain and operate a business office, located in the State of New Jersey, devoted to the conducting of the Business of Title Insurance, maintain adequate personnel to originate and service such business and actively remain engaged in the Business of Title Insurance.

**COMPLIANCE WITH RULES AND LAWS**

I.   All of these activities shall be conducted in accordance with the rules, regulations and instructions of insurance laws, rules, and regulations of the State of New Jersey, the United States of America, and any other political entity having the appropriate jurisdiction, whether now in force or issued or promulgated hereafter.

**PROHIBITED ACTS**

3.   Agent shall not, without prior written approval of Insurer:

**USE OF INSURER'S NAME**

A.   Use the name of the Insurer in any of its advertising without the prior approval of Insurer.

**LIABILITY LIMITS**

B.   Commit Insurer to:

(1)   A risk in excess of $1,000,000.00; or

(2)   A risk involving a title where Agent has knowledge of defects, adverse claims, or questions of title known in the community; or

(3)   An extraordinary risk as set forth in Insurer's rules, regulations, instructions, or manuals.  All such titles, together with the supporting abstract, certificate of title, chain of

3

title (if no abstract is furnished), searches, and other relevant material, together with a statement of the special question involved, if any, shall be submitted to Insurer for approval before Agent incurs any liability on behalf of Insurer.

## MINIMUM POLICY AMOUNTS

C.  Process an application for title insurance for an amount less than the present fair market value of premises involved, in cases of Owner's Policies; or, for less than the amount of indebtedness, in cases of Lender's Policies.

## POLICY COVERAGE

D.  Vary or change the printed portion of any form of Commitment to Insure, Binder or Policy of Title Insurance furnished to Agent by Insurer, whether by physical alteration of the form or by separate writing, nor commit Insurer to any particular interpretation of the terms or provisions of any Commitment to Insure, Binder, or Policy of Title Insurance.

## INCUR DEBT, CLAIMS NOTIFICATION

E.  Incur debt in the name of Insurer, adjust any claim for loss or accept service of summons or other process on Insurer, but Agent shall immediately notify Insurer at its Office, **The Talon Group, 110 Pearl Street, Suite 900, Buffalo, New York 14202 Attn: Agency Manager** by certified mail, or overnight messenger service or hand delivery, of any attempted service of summons, other process, or other paper upon Agent, or any notice of claim, as the Agent of Insurer, and the reason therefore, if obtainable.

## ACCEPT FUNDS FOR INSURER

F.  Receive or receipt for any fund, including escrow, or closing, fund, in the name of Insurer, but shall receive and receipt for same for its own account.

## ACCEPT SECURED INDEMNITY

G.  On behalf of Insurer, accept or retain deposits which are intended to secure an indemnity, unless expressly authorized to do so by Insurer. Any such deposit, whether denominated as such, shall be promptly forwarded to Insurer, unless expressly authorized, in writing, to be retained by Agent in a trust account under the provisions of this Agreement.

## SERVICE OF PROCESS

H.  Accept service of any process on behalf of Insurer.

## CONFLICT OF INTERESTS

I.  Insure, or commit to insure, any title in which the agent, its officers or its employees have any interest without prior written consent of Insurer.

## LICENSES

L.  Conduct business on behalf of Insurer at any time during which Agent does not have the required title insurance producer license for both the Agent as well as for any of Agent's employees who are required to be so licensed by the State of New Jersey.

4

## INSURER'S RIGHTS AND DUTIES

4.    Insurer shall:

### EXAMINE BOOKS

A.    Have the right at all reasonable times to examine all accounts of Agent and to check any and all checks, books, records, and files of Agent, which pertain to the Business of Title Insurance.

### DETERMINE RISK

B.    Determine promptly all questions of risk submitted by Agent.

## OWNERSHIP/ACCESS TO FILES

5.    Each file and its complete contents, or a duplicate copy thereof, pertaining to a title insurance policy of Insurer are the property of Agent, unless insurance laws provide to the contrary. During the term of this Agreement (and continuing after termination of this agreement for whatever cause), Insurer shall have the continued right of access to, and continued use of these files, including the ability to make copies from time to time.

## TERMINATION/BANKRUPTCY

6.    This Agreement may be terminated by Agent or by Insurer on the filing of a petition in bankruptcy by either of them, or if a creditor of either of them files a petition in bankruptcy against the party and the petition contains an allegation of insolvency and results in a final adjudication of bankruptcy against either party, or if either of them should go into liquidation, or receivership, or have a conservator or rehabilitator appointed.

## TERMINATION/CHANGE OF OWNERSHIP

7.    At the option of Insurer, this Agreement may be terminated should there be a change in ownership of the controlling interest of the Agent or a change in the management of the Agent. A change in the ownership of the capital stock of at least 51% of the outstanding capital stock of the Agent to other stockholders who do not presently own or control 51% or more of such stock shall be deemed to be a change in the ownership or controlling interest of the Agent. Agent agrees to promptly notify Insurer of all changes in ownership of the Agent.

## TERMINATION/BREACH OF AGREEMENT

8.    Insurer shall have the right forthwith to cancel and terminate this Agreement in the event Agent fails to report and to pay to Insurer the fees due the latter within 15 days after same became due in accordance with the provisions of Paragraph Two (2) of this Agreement, or otherwise fails to comply with the terms and provisions of this Agreement, or if Insurer shall receive information of any act of apparent fraud or dishonesty on part of the Agent or of any of Agent's officers or employees and same proves to be correct.

## TERMINATION/INSURER'S WITHDRAWAL

9.    The withdrawal, voluntary or involuntary, by Insurer from the State of New Jersey or the disqualification of Insurer to transact or continue to transact business in that State, shall automatically terminate this Agreement. It is agreed that Insurer has the right, at any time, solely at its option, to withdraw from the State of New Jersey, or any part thereof, or cease business

therein for any reason deemed proper and sufficient by Insurer, including but not limited to business, economic and financial reasons, or on account of any taxes, license fees, laws, restrictions, or of regulations or orders of any governmental authority affecting the business contemplated hereunder, or the mode or cost of transacting same, or premiums or income arising therefrom. Insurer shall give Agent Ninety (90) days notice of its intention to withdraw, if voluntary.

## TERM OF AGREEMENT/CANCELLATION NOTICE

10. Agent and Insurer shall each have the right to cancel this Agreement, except for the provisions which survive the termination of this contract, on a minimum of Thirty (30) days notice to the other. In the event of voluntary cancellation in accordance with this provision, notice shall be deemed effective on the earlier of (a) actual receipt thereof by recipient or (b) when notice if placed in the custody of the United States Post Office Certified Mail, postage paid, addressed to the recipient at the address stated herein unless another address for furnishing notice has been furnished to, and received by, the party giving notice under the provisions of this paragraph.

## TERMINATION OBLIGATION/FORMS & PREMIUMS

11. Upon the termination of this Agreement, all supplies, forms, and records of Insurer in the possession of Agent shall be promptly delivered by Agent to Insurer, and Agent shall promptly account for and pay to Insurer all fees due, including, but not limited to, fees to which Insurer is entitled which Agent has collected for policies to be issued and for reinsurance, pursuant to outstanding binders or commitments to insure. Notwithstanding a termination of this Agreement, all duties, obligations and undertakings of the Agent contained in this Agreement shall survive the termination and remain in full force and effect until they have been fully performed.

## TERMINATION OBLIGATION/ESCROWS

12. If, upon termination of this Agreement, Agent has in its possession, or under its control, any funds or other indemnity against loss or damage to Insurer, upon, or by reason of, a Commitment to Insure or Title Insurance Policy of Insurer, Agent shall immediately transfer the funds and other indemnity to Insurer, together with all Agreements and other writing relating thereto.

## INDEMNIFICATION

13. Agent shall be liable to Insurer for all loss, cost of damage, including attorney's fees and other costs, which Insurer may sustain, or become liable for, on account of:

### BREACH OF CONTRACT

A. Failure of Agent to comply with the terms of this Agreement or with rules, regulations, and instructions given to Agent by Insurer.

### FRAUD, NEGLIGENCE, ETC.

B. Any dishonest, fraudulent, malicious, criminal or negligent act, whether by Agent of by Agent's employees or parties hired by Agent, in connection with:

(1) The issuance of an abstract of title, binder, commitment to insure, or policy of title insurance or other evidence of title of the Insurer; or

6

(2)    A closing by the Agent, its employees, or its independent sub-contractors involving the issuance of a policy of the Insurer.

(3)    Escrow loss limited to losses occasioned by Agent's failure to disburse properly or close in accordance with escrow instructions, or where such escrow finds are misappropriated by Agent, its officers or employees.

(4)    Agent's liability to Insurer for ordinary negligence shall not exceed the amount of liability insurance required to be maintained under the provisions of paragraph 2 G. of this Agreement. Agent may, at its election, pay any and all claims brought against it under terms of this section, and shall then be subrogated to the rights of Insurer with respect to same.

## DUTY TO COOPERATE

14.    Agent agrees to cooperate and assist in the defense of any litigation brought as a result of any claim based on Agent's own negligence or that of any employee of Agent, or if requested and approved by Insurer, and with counsel satisfactory to Insurer, to undertake the defense.

## CLAIMS

15.    If Agent obtains information from any source regarding possible existence of an actual or potential claim, Agent shall promptly notify Insurer and fully cooperate with Insurer in determining liability for such claim, as also set out in the provisions of paragraphs 3E, 3H, 14 and 17 of this Agreement. Agent shall not communicate, without the written consent of the Insurer, any determination of liability with regard to any claim. Agent shall immediately notify Insurer at its Office, **The Talon Group, 110 Pearl Street, Suite 900, Buffalo, New York 14202 Attn: Agency Manager,** by certified mail, or overnight messenger service of any attempted service of summons, other process, or other paper upon Agent, or any notice of claim, as the Agent of Insurer, and the reason therefore, if obtainable.

## INSURER'S LIABILITY

16.    Insurer shall be liable for all other losses, damage, expense and cost arising out of claims covered by, and based upon, any title insurance forms issued under the terms of this agreement, excepting only those losses, damage, expense and cost caused by actions, or omissions, for which Agent is responsible in this Agreement. If Agent is a party to an action for which Insurer is liable for payment, Insurer agrees to Indemnify Agent for any reasonable expenses it may incur, including counsel fees.

## RIGHT TO SETTLE

17.    Insurer shall have the right to adjust, settle or compromise claims and, in its sole discretion, to commence, defend, compromise, or withdraw from actions, suits or prosecutions and in general do all things in connection therewith which it may deem expedient.

## NON-TRANSFERABILITY

18.    This Agreement is neither assignable nor transferable by Insurer or Agent without the written consent of the other, nor are any rights or interests arising out of this Agreement in favor of

7

Insurer or Agent assignable or transferable without the written consent of the other. Any attempted assignment or transfer, without the required written consent, whether voluntary or by operation of law, shall be void.

## PREMIUM TAXES

19.    Insurer agrees to pay premium taxes, if any, assessed against the title insurance premiums, and Agent agrees to pay all other taxes of whatever nature to all other taxing authorities.

## EXPERIENCE REPORTING

20.    Insurer may be required by regulatory authorities to prepare special experience reports. In order for Insurer to meet this requirement, Agent must furnish it with certain information in connection with each transaction. This information is supplied by completing the remittance report form provided by Insurer.

## CONSENT

21.    Agent, on behalf of itself and any present or future owner of any interest in Agent, hereby consents to the securing, from time to time, by insurer of one or more investigative report or reports whereby information is obtained by or through any third parties, such as family members, business associates, financial or business sources, friends, neighbors with whom they are acquainted or others. This inquiry may include information as to their financial responsibility, credit worthiness, character, general reputation, personal characteristics, and mode of living, whichever is applicable. Agent and any present or future owner of any interest in Agent have the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of the investigation. This disclosure, and consent, are given in compliance with the provisions of § 606(A)(1) of "The Fair Credit Reporting Act" and any other applicable law. Provided Agent gives notice of the intent to transfer an ownership interest in Agent at least thirty (30) days prior to such transfer, then Insurer agrees that it will not secure any investigative report on a future owner or future part owner of Agent without giving the proposed owner(s) prior notice of its intent to secure the report(s).

## AGENT'S REPRESENTATIONS

22.    Agent hereby represents that there are no existing impediments, legal, equitable, or otherwise, which would prevent Agent from entering into this Agreement or cause Agent to be in breach or violation of any existing contract or Agreement which Agent may have with any third party relating to the subject matter of this Agreement. In making this representation, Agent has undertaken a review of all existing contracts and Agreements which Agent may have with third parties relating to the subject matter hereof.

## NOTICES

23.    All notices required by this Agreement shall be in writing, delivered by hand, overnight messenger, or certified mail, return receipt requested, addressed to the Insurer or Agent, at the addresses set forth below, or as may be hereafter changed by notice in writing, from one party to the other.

8

**THE TALON GROUP**
110 Pearl Street – Suite 900
Buffalo, New York 14202
Attn. Agency Manager

**CLEAR ADVANTAGE TITLE, INC.**
1670 Whitehorse Hamilton Square Road
Hamilton New Jersey 08690
Attn. Edward A.M. Furfey

**ENTIRE AGREEMENT**

24. This Agreement constitutes the entire Agreement between Insurer and Agent. There are no representations, warranties, covenants, or promises, whether made as an inducement to the signing of this Agreement or otherwise, unless they are incorporated into this Agreement. The intention of Insurer and Agent being that any matters raised during the negotiations for this Agreement be merged into the terms of this Agreement.

**PARTIES BOUND**

25. This Agreement shall be binding on, and insure to the benefit of, Agent and Insurer and any corporate successors of Insurer.

**CHOICE OF LAWS**

26. This Agreement shall be interpreted under the laws of the State of New Jersey.

**HEADINGS INFORMATIONAL**

27. The bold face headings in this Agreement are for convenience and information only and are not intended to add to or detract from the meaning of the provisions of this Agreement.

**IN WITNESS WHEREOF**, the parties to this Agreement have caused this Agreement to be executed on the date first written in this Agreement.

WITNESS:

_____

FIRST AMERICAN TITLE INSURANCE COMPANY, THROUGH ITS DIVISION, THE TALON GROUP

By: _____
Gary R. Cotellessa,
Senior Vice President

WITNESS: _____

August 4, 2005

CLEAR ADVANTAGE TITLE, INC.

By: _____
Edward A. M. Furfey
President

9

# The Law Firm of
## Nazor, Cengarle & DeCarlo, LLC
### Attorneys at Law

190 Main Street, Suite 307
Hackensack, NJ 07601
t. 201.487.4805 . f. 201.992.3055

Bryan Nazor, Esq.
Admitted in New York & New Jersey

Julio Cengarle, Esq.
Lauren B. DeCarlo, Esq.

June 15, 2007

Mr. Richard M. Klarin
First American Title Insurance Company
200 N. LaSalle Street – Suite 2450
Chicago, Illinois 60616

*8182425800*
*f 818 502 0513*

RE:  File No:     MO7-6220
     Mortgagor:  Adanurby Ortiz and John Toribio
     Premises:   28 Luhmann Terrace
                 Tax Lot 3, Tax Block 222
                 Secaucus, New Jersey

Dear Mr. Klarin:

Kindly be advised that this office represents Hogar Mortgage & Financial Services, Inc. d/b/a Colamerica ("Hogar") in connection with this Notice of Claim to your company.

In connection with the above referenced transaction, your agent, Clear Advantage Title, Inc., issued a title commitment and a Closing Protection Letter dated May 16, 2007. Hogar, the lender, as part of this transaction, wired $632,152.07 to your agent's trust account held at First Constitution Bank. The wire was sent on June 8, 2007. It is our understanding the transaction failed to close at which point Hogar requested the funds to be returned. A principal of Clear Advantage Title, Inc., however, informed Hogar that he was unable to return the funds because someone had "stolen the funds from his account."

In light of these circumstances, please accept this letter as Notice of a Claim for the missing funds due Hogar totaling $632,152.07 not including any/all accrued interest to date. We hereby demand the return of said funds immediately as interest on same is accruing daily.

For your review, please find a copy of the Closing Protection Letter and title commitment issue by Clear Advantage Title, Inc. as Agent for First American Title Insurance Company.

Please have someone from your office contact me immediately to resolve this issue so as to avoid litigation.

Very truly yours,

NAZOR, CENGARLE & DeCARLO, LLC

Bryan Nazor, Esq.

Sent CMRRR

Cc:

    Clear Advantage Title Company – Sent via CMRRR
    Hogar Mortgage and Financial Services, Inc. – Sent via CMRRR
    Thomas Sarlo, Esq. –Sent via CMRRR
    Mohamed Najam – Sent via telefax